UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| KENNETH A. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 22-130-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| LT. HURLEY and J. HUTSON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

Inmate/Plaintiff Kenneth Jones is confined at the federal penitentiary in Beaumont, Texas. Jones has filed a *pro se* civil rights Complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). [Record No. 1] Following service of process, Defendants Clint Hurley and Johnathon Hutson move to dismiss the Complaint, or alternatively, for summary judgment. [Record No. 16] The motion is ripe for decision.

**I**

Because this matter is pending for consideration of a motion to dismiss, the Court considers Jones's non-conclusory factual allegations as uncontroverted. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). The events relayed in Jones's Complaint occurred while he was confined at the federal prison in Pine Knot, Kentucky. [Record No. 1 at 3] Jones alleges that, in November 2021, an unidentified assailant struck him in the face during an altercation. *Id*. The defendants indicate that Jones was involved in a fight with another inmate. [Record No. 16-1 at 3] While Jones was on the floor, a prison guard pressed the duress button and Officers Hurley and Hutson entered the room. While Jones was being handcuffed, he told

-1-

the officers that something was wrong with his left leg and that it could not support his weight. [Record No. 1 at 2]  Jones states that Hutson and Hurley nonetheless pulled him to his feet and forced him to walk quickly down a hallway.  Hutson acknowledges that he was involved in these events but Hurley – a Disciplinary Hearing Officer ("DHO") – states that he was never present.  *See* [Record No. 16-1 at 2 n.1; Record No. 16-3 (Hurley Decl.) at 3]

While being escorted, Jones continued to complain that his left knee was injured. Eventually he fell to the ground, causing the officers to fall on top of him.  Jones claims that, as a result, he could not breathe and eventually lost consciousness.  *See* [Record No.1 at 3] For his part, Hutson contends that Jones repeatedly attempted to pull away, at which point he drove Jones to the ground.  Hutson also states that other officers then took over the escort and he left the area.  *See* [Record No. 16-1 at 3]  Jones also claims that his handcuffs were secured too tightly, causing pain and loss of circulation.  According to Jones, Hurley was verbally abusive throughout the encounter.  [Record No. 1 at 2-3]

Jones alleges that he regained consciousness when the officers rolled a wheelchair in which he was seated into a wall, causing his head to strike the wall.  *Id*. at 5.  Following medical examination, Jones was diagnosed with a "high grade tear distal quadriceps tendon."  [Record No. 1 at 4]

Finally, Jones alleges that Hurley and Hutson charged him with disruptive conduct in an effort to cover up their misconduct.  *Id*.  Hutson states that he charged Jones with refusing to obey an order, a Code 307 disciplinary offense.  [Record No. 16-3 at 3]  Jones contends that Hurley's verbal abuse, including repeatedly telling him to "shut up," violated his rights under the First Amendment.  He further asserts that the officers used excessive force in violation of the Eighth Amendment.  [Record No. 1 at 5]

**II**

The defendants have move to dismiss Jones's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  They primarily contend that the Court should not infer a remedy under *Bivens* for the plaintiff's claims in light of the Supreme Court's decisions in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and *Egbert v. Boule*, 142 S. Ct. 1793 (2022). [Record No. 16-1 at 7-15]  They also argue that the claims asserted against DHO Hurley should be dismissed because he was not involved in any way in escorting Jones; that the claims against Officer Hutson should be dismissed because the evidence indicates that he did not use excessive force; and that both officers are entitled to qualified immunity.  *See* [Record No. 16-1 at 16-19]  Because only the first argument is adequately developed and it is sufficient to resolve the motion, the Court need not address these further contentions.

In his response, Jones reiterates the factual allegations set forth in his Complaint in his response.  Additionally, he makes numerous allegations for the first time, and argues that the defendants' conduct violated his constitutional rights.  [Record No. 18]  Jones also repeatedly invokes Rule 56(d) and/or Rule 56(f) of the Federal Rules of Civil Procedure.  He states that discovery, including disclosure and review of the video footage of the escort taken by security cameras, is necessary to support his claims.[1]  *See id*. at 1-9.

The Court first addresses Jones's contention that he needs discovery to adequately respond to the defendants' motion for summary judgment.  Rule 56(d) allows the Court to

---

[1]  Rule 56 was amended on December 1, 2010, resulting in the substance of former Rule 56(f) being moved to current Rule 56(d).  Despite this reorganization, "subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 56, Advisory Committee's Note to 2010 Amendment.  The Court construes Jones' references to these provisions as requesting deferral of a decision on the defendants' motion until after discovery is permitted pursuant to current Rule 56(d).

defer a decision upon a motion for summary judgment until after discovery is conducted "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion.   Fed. R. Civ. P. 56(d).   The Court has discretion regarding whether to grant such a request.   *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 426 (6th Cir. 2009).

Here, the defendants' central argument is that, in light of *Ziglar* and *Egbert*, the Court should conclude that no implied remedy under *Bivens* exists for Jones's claims. [Record No. 16-1 at 7-15]   This aspect of their motion seeks dismissal under Rule 12(b)(6), not summary judgment under Rule 56(a).   Thus, Rule 56(d) is inapplicable.   After all, "the very purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (cleaned up).   In any event, the determination necessary under *Ziglar* is a pure question of law, not one of fact.   *Cf. Ojo v. United States*, 364 F. Supp. 3d 163, 167 n.3 (E.D.N.Y. 2019); *Dinkins v. United States*, No. 2: 21CV08942-CAS (KES), 2022 WL 15525746, at *1 (C.D. Cal. Oct. 27, 2022).

The video surveillance footage Jones seeks is not needed for him to oppose the Defendants' arguments under *Ziglar*.   *Cf. Swoger v. Rare Coin Wholesalers*, 803 F. 3d 1045, 1048 (9th Cir. 2015) (plaintiff did not satisfy Rule 56(d) request for further discovery where summary judgment determination "turned on a pure question of law"); *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London*, 735 F. Supp. 2d 1246, 1256 (E.D. Wash. 2010) (continuance for discovery is not necessary to respond to purely legal arguments where the controlling facts are not in dispute).   Because the Court does not address the defendants'

alternative and more fact-dependent arguments for summary judgment, Jones's request under Rule 56(d) to delay resolution of the pending motion will be denied.

The defendants argue that Jones's claims under the First and Eighth Amendments are not cognizable under *Bivens* because they present new contexts from those where the Supreme Court has previously permitted an implied remedy, and special factors counsel against expanding the *Bivens* remedy to encompass Jones's claims.  [Record No. 16-1 at 7-15]  The undersigned agrees with this analysis.

After *Bivens* was decided in 1971, lower federal courts extended the case's rationale to provide an implied remedy against federal actors for a wide variety of constitutional claims. The Supreme Court, however, has implied a damages remedy in only three instances.  They include:

(1) where federal officials search a private residence without probable cause in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 397;

(2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 249 (1979); and

(3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 24 (1980).

Since 1980, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants."  *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001).  Instead, it has expressly rejected requests to extend *Bivens* on eight different occasions.  *Ziglar v. Abbasi*, 127 S.Ct. 1843, 1857 (2017) (collecting cases).

The Supreme Court has thus made clear that *Bivens* is a remedy available only in "limited settings," *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009), and that expanding that remedy

is disfavored, *Ziglar*, 127 S.Ct. at 1857.   Federal courts have viewed *Ziglar* as clearly "narrow[ing] the circumstances in which a plaintiff may successfully state a claim under principles established in *Bivens*."  *See Atkinson v. Holder*, 925 F.3d 606, 620 (4th Cir. 2019); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) ("What started out as a presumption in favor of implied rights of action has become a firm presumption against them.").

In *Ziglar*, the Supreme Court directed lower courts to employ a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials.  First, a court must decide if the plaintiff's claim presents a "new context" for application of *Bivens* because it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Ziglar*, 137 S.Ct. at 1859.  A difference is "meaningful" if, for example, it involves a different constitutional rights, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion.  *Id*. at 1860.  If the proposed *Bivens* claim would involve a new context, the Court must then decide whether any special factors counsel hesitation before extending the *Bivens* remedy to the new context.  *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019).

In *Ziglar*, the Court explained that the central question is "who should decide whether to provide for a damages remedy, Congress or the courts?  And the answer most often will be Congress." *Ziglar*, 137 S. Ct. at 1857 (cleaned up).  The Supreme Court recently re-emphasized that in the special factors analysis, Congress' role in crafting remedies for the violation of federal rights is nearly exclusive:

> "Unsurprisingly, Congress is far more competent than the Judiciary to weigh such policy considerations. And the Judiciary's authority to do so at all is, at best, uncertain. . . . If there is a rational reason to think that the answer is "Congress" - as it will be in most every case - no *Bivens* action may lie. While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy.

*Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (cleaned up).

It is plain that Jones's claims present contexts entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*. In this regard, the claim under review must bear a striking resemblance to a *Bivens* claim previously recognized by the Supreme Court because even a "modest extension" of a prior Supreme Court case constitutes a new context. *Ziglar*, 137 S.Ct. at 1864. Jones's free expression claim under the First Amendment clearly presents a new context: the Supreme Court has repeatedly refused to imply a *Bivens* remedy for claimed violations of First Amendment rights. *Egbert*, 142 S. Ct. at 1807 (concluding that no cause of action lies under *Bivens* for First Amendment retaliation claim); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to extend *Bivens* to freedom of speech claim under First Amendment in context of federal employment).

Similarly, while the Supreme Court recognized a *Bivens* claim for the denial of adequate prison medical care under the Eighth Amendment in *Carlson*, it has never permitted an excessive force claim under *Bivens*. *Silva v. United States*, 45 F. 4th 1134, 1137 (10th Cir. 2022) ("The distinction between an excessive force claim like the one Plaintiff brings and a deliberate indifference to medical needs claim - which the Supreme Court recognized as a valid *Bivens* action in *Carlson* - is sufficient to conclude that Plaintiff's claim would require an

expansion of *Bivens* to move forward even though it originates under the Eighth Amendment."); *Morel v. Dep't of Just.*, No. 7:22-CV-15-DCR, 2022 WL 4125070, at *5 (E.D. Ky. Sept. 9, 2022) ("Morel's Eighth Amendment claim based on allegations that officers used excessive force against him presents a context that is entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*."); *Baldwin v. Hutson*, No. 6:19-CV-151-REW-HAI, 2022 WL 4715551, at *2 (E.D. Ky. Sept. 30, 2022) ("As an Eighth Amendment excessive force claim differs, radically perhaps, from a medical indifference claim, such a claim would be a new *Bivens* context.  Numerous courts have reached the same conclusion.") (collecting cases); *Johnson v. Gann*, No. 1:19-CV-5, 2022 WL 772953, at *4 (E.D. Tex. Feb. 15, 2022) ("Plaintiff's claims of excessive force, verbal abuse, failure to protect, and a falsified disciplinary case are new contexts because the Supreme Court has not previously recognized an implied cause of action for these claims."), *report and recommendation adopted*, 2022 WL 759526 (E.D. Tex. Mar. 11, 2022).

Because Jones's claims arise in a new context, the Court must next ask whether special factors counsel against the courts implying a damages remedy when Congress has not done so. *Egbert*, 142 S. Ct. at 1803.  Many such factors are present here.  First and foremost, Congress chose not to create a statutory cause of action against federal officials for violations of constitutional rights, either when it did so for state actors in its initial enactment of 42 U.S.C. § 1983, or in the extensive revisions to the civil rights laws in the Prison Litigation Reform Act of 1995.  The Supreme Court has noted the particular relevance of the latter omission.  *See Ziglar*, 137 S. Ct. at 1865 (noting that "the [PLRA] itself does not provide for a standalone damages remedy against federal jailers.  It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner

mistreatment.").  After all, such "prison-based claims present a risk of interference with prison administration."  *Callahan*, 965 F.3d at 524.

Second, federal prisoners have other means to vindicate their constitutional rights.  The Bureau of Prisons' inmate grievance program provides a viable alternative mechanism to challenge staff misconduct.  *See Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring."). This remedy is not considered less meaningful merely because it is created by regulation rather than by statute, *Callahan*, 965 F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress."), or less effective merely because it does not provide the deterrence afforded by damages, *Egbert*, 142 S. Ct. at 1807 ("So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.").  *See also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).  Courts have thus consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*.  *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

Federal inmates may pursue several other avenues to challenge or remedy wrongdoing. They may request an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General, *see* 28 C.F.R. § 45.11, which may serve to deter misconduct.  *Hower v. Damron*, No. 0:20-CV-53-WOB, 2021 WL 4449980, at *6 (E.D. Ky. Sept. 28, 2021), *aff'd*, No. 21-5996, 2022 WL 16578864 (6th Cir. Aug. 31, 2022).

Federal prisoners may seek injunctive relief to halt constitutional violations, again counseling against the creation of implied remedy for damages. *See, e.g., K.B. v. Perez*, 664 F. App'x 756, 759 (10th Cir. 2016) (recognizing that suits for injunctive relief constitute alternative means for preventing unconstitutional conduct in the prison context); *Tillman v. Huffman*, No. 1:20-CV-63, 2020 WL 9348241, at *7 (S.D.W. Va. May 28, 2020) (collecting cases), *report and recommendation adopted*, No. CV 1:20-00063, 2021 WL 1153995 (S.D.W. Va. Mar. 26, 2021); *Millbrook v. Spitz*, No. 18-CV-01962-RM-KMT, 2019 WL 5790701, at *10 (D. Colo. Aug. 26, 2019), *report and recommendation adopted*, No. 1:18-CV-01962-RM-KMT, 2019 WL 4594275 (D. Colo. Sept. 23, 2019). And the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*., permits a damages action against the United States for certain negligent or intentional acts committed by its employees during the course of their employment. *See* 28 U.S.C. § 1346(b)(1). "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 142 S. Ct. at 1804 (cleaned up); *see also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Based on the foregoing, the undersigned concludes that ample factors counsel strongly against implying a remedy under *Bivens* for Jones's claims and declines to do so here. Accordingly, it is hereby

**ORDERED** as follows:

1. The defendants' Motion to Dismiss [Record No. 16] is **GRANTED**;

2. Jones's Complaint [Record No. 1] is **DISMISSED** with prejudice; and

3. This matter is **STRICKEN** from the docket.

-10-

Dated: February 1, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky